IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| James Fordyce, Joshua Pelletier, Michael Ellis, and Randall Swayze, on behalf of themselves and all other plaintiffs similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: |
| CLIMATE PROS LLC, Todd Ernest, Martin Hamilton, and Patricia Burkland, | ) ) ) ) ) | |
| Defendants. | ) | |

## COLLECTIVE AND CLASS COMPLAINT

NOW COMES Plaintiffs James Fordyce ("Fordyce"), Joshua Pelletier ("Pelletier"), Michael Ellis ("Ellis") and Randall Swayze ("Swayze") (collectively, "Plaintiffs") by their attorneys, Fish Potter Bolaños, PC and for their Collective and Class Complaint against Climate Pros, LLC ("Climate Pros"), Todd Ernest ("Ernest"), Martin Hamilton ("Hamilton"), and Patricia Burkland ("Burkland") (collectively "Defendants") state as follows:

## NATURE OF THE ACTION

1. Climate Pros is a nationwide commercial refrigeration and HVAC company that designs, builds, and services refrigeration systems throughout the United States.

2. Climate Pros agreed to pay employees base hourly wages or salaries plus additional compensation in the form of commissions and/or bonuses.

3. This additional commission and/or bonus compensation was based on the profitability of projects/jobs worked on by employees.

4. However, Defendants failed to properly calculate the profitability of projects/jobs, and thus, did not properly calculate the additional commission compensation owed to employees.

5. Defendants' actions resulted in employees being paid lower commissions and/or bonuses than they actually earned pursuant to their agreement with Defendants.

6. Additionally, Climate Pros failed to include this additional commission and/or bonus compensation in the regular rate of pay when calculating overtime premiums as is required under the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law ("IMWL").

7. This failure to properly calculate employees' regular rates of pay resulted in employees being deprived of their proper overtime earnings.

## PARTIES

8. Plaintiffs Fordyce, Pelletier, and Swayze are natural persons residing in Illinois. Plaintiff Ellis is a natural person currently residing in Michigan.

9. Defendant Climate Pros is an Illinois limited liability company with a principal place of business at 55 North Brandon Drive, Glendale Heights, Illinois.

10. Defendant Climate Pros is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1)(A) of the FLSA.

11. During the last three years, Defendant Climate Pros' annual gross volume of sales made or business done has exceeded $500,000, exclusive of excise tax.

12. Defendant Ernest is a natural person, who at all relevant times served as Climate Pros' President and Chief Executive Officer ("CEO").

13. Defendant Hamilton is a natural person, who at all relevant times served as Climate Pros' Vice President of Construction.

14. Defendant Burkland is a natural person, who at all relevant times served as Climate Pros' Chief Financial Officer ("CFO").

15. Defendant Climate Pros was the Plaintiffs' "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

16. Defendant Climate Pros was the Plaintiffs' "employer" as defined by the IMWL. 820 ILCS 105/3(c).

17. Defendants were the Plaintiffs' "employer" as defined by the Illinois Wage Payment and Collection Act ("IWPCA"). 820 ILCS 115/2.

18. Plaintiffs were Defendant Climate Pros' "employees" as that term is defined by the FLSA. 29 U.S.C. §203(e)(1).

19. Plaintiffs were Defendant Climate Pros' "employees" as that term is defined by the IMWL. 820 ILCS 105/3(d).

20. Plaintiffs were Defendants' "employees" as that term is defined by the IWPCA. 820 ILCS 115/2.

**JURISDICTION AND VENUE**

21. Subject matter jurisdiction and supplemental jurisdiction are conferred on this Court by 28 U.S.C. § 1337 and by 29 U.S.C. § 216(b).

22. Venue is proper in this Judicial District, the events arising out of this case arose in this Judicial District.

**FACTUAL ALLEGATIONS**

23. Plaintiffs were employees of Climate Pros between the last three to ten years.

24. James Fordyce worked as an estimator and project manager in Climate Pros' electrical division from about April 2016 until June 2022.

25. Michael Ellis worked as a construction sales manager or a similar job title at Climate Pros from about November 2015 until about July 2017.

26. Joshua Pelletier worked as an hourly night superintendent in Climate Pros' electrical division from about May 2017 until about July 2022.

27. Randall Swayze worked as an hourly field supervisor or superintendent in Climate Pros' electrical division from about 2014 until about July or August 2022.

28. At all times relevant to this action, Ernest served as Climate Pros' President and CEO. In that capacity, he was responsible for, among other things, Plaintiffs' compensation to the extent those decisions were not governed by the applicable collective bargaining agreement ("CBA").

29. At all times relevant to this action, Hamilton served as Climate Pros' Vice President of Construction. In that capacity, he was responsible for overseeing the operations of various Climate Pros departments and the employees of those departments, including Plaintiffs. Hamilton was also responsible for Plaintiffs and other similarly-situated employees compensation, including payment of commissions and/or bonuses.

30. At all times relevant to this action, Burkland served as Climate Pros' CFO. In that capacity she was responsible for, among other things, managing the financial actions of Climate Pros, including calculating the cumulative gross profit on individual jobs, and overseeing employee compensation and commissions and/or bonuses, including Plaintiffs' commissions.

31. During their employment with Climate Pros, Plaintiffs and other similarly-situated employees were covered by an agreement to pay them a commission in addition to their base wages, under which they earned a percentage of the gross profit of the projects they worked on so long as the project's cumulative gross profit was over a certain threshold ("commission agreement").

32. For example, pursuant to the aforementioned agreement, from the start of his employment until 2017, Fordyce was to earn about 5% of the gross profit of all projects. From 2017 going forward, Fordyce was to earn about 4% of the gross profit on projects that had individual cumulative gross profits over a 20% margin. These calculations were made on a per project or per job basis.

33. The commission agreement was the same for hourly employees like Plaintiffs Pelletier and Swayze, but the percentage of profit they earned was in the range of 2% of the gross profit of jobs over the designated minimum profit margin.

34. The commission agreement applied to all construction employees who actually worked on jobs along with their supervisors and estimators and was outside the scope of any applicable union collective bargaining agreements.

35. The only aspect of the commission agreement that differed between supervisors and estimators versus hourly employees was that hourly employees earned a smaller percentage of projects' gross profits.

36. Pursuant to the commission agreement, commissions were to be paid quarterly.

37. Climate Pros did not require employees, including Plaintiffs, to be employed by the company on the day the commission checks issued in order to receive commissions on jobs they completed during their employment.

38. On numerous occasions during the relevant time period, commissions were either not paid as promised or were not paid on time.

39. Labor costs were a material factor in establishing the profitability of any given project. Generally, labor costs should have been a fixed cost per individual worker that did not fluctuate from job-to-job absent a change, such as an increase in the labor rate reflected in the applicable CBA or a change in a healthcare plan, which typically only happened once per year during open enrollment.

40. Defendants frequently artificially inflated labor costs and applied those inflated costs in wildly inconsistent manners.

41. For example, Defendants would show one worker in Climate Pros' internal accounting system as having three different labor costs for performing the same work on the same job — all of which were higher than the worker's actual labor cost. In such instances, Climate Pros actually billed out the worker to the general contractor at a consistent rate and was paid the same based on the bid price. Thus, Climate Pro's *actual* profit margin remained the same throughout the life of the project. Climate Pros manipulated its internal books and records to artificially decrease its profit margin by assigning employees multiple varying labor costs on the same job.

42. To the extent Climate Pros applied the higher labor cost, the job showed a smaller profit margin and thus, smaller commissions.

43. Upon information and belief, Climate Pros' manipulation of its internal accounting and records were consistently in Climate Pros' favor, and were to the detriment of Plaintiffs and other similarly situated employees who were paid pursuant to the same commission agreement.

44. As a result of Climate Pros' manipulation of its internal accounting and its use of inflated, inaccurate labor costs, it appeared as though individual jobs were less profitable than they

actually were. This, in turn, had a direct negative impact on commissions earned by Plaintiffs and other similarly situated employees, whereby commissions were either not paid at all or were reduced as a direct result of the improper (and inaccurate) deflation of the profit margins. Climate Pros was aware that it used inflated, inaccurate labor costs in calculating the cumulative gross profit of individual jobs and, thus, reduced the commission calculations for those jobs.

45. On multiple occasions, Plaintiffs and other Climate Pros employees raised concerns to Defendants that Climate Pros was undercalculating their commissions. However, Defendants did not correct the calculations.

46. In about June 2022, Defendant Burkland admitted in an email that Climate Pros had improperly calculated profit margins and the associated commissions. Defendants stated they would correct the underpayments in the future, but not in the past.

47. Upon information and belief, Defendants' profit margin and commission calculations were not actually corrected after June 2022.

48. As CFO and Vice President of Construction respectively, both Burkland and Hamilton had the authority to direct Climate Pros to pay out the underpayment of the commissions to Plaintiffs and the other adversely impacted employees, but willfully and knowingly chose not to do so.

49. Climate Pros and its senior leadership, including Ernest, Burkland and Hamilton, had actual knowledge of Climate Pro's failure to pay wages it owed to Plaintiffs (and others), had the ability to ensure that Climate Pros satisfied its obligations by paying all wages owed, and intentionally refused and/or failed to pay all wages due and owing to Plaintiffs and others similarly situated.

50. Because of Climate Pros' willful use of inaccurate, inflated labor costs, Plaintiffs and all similarly-situated employees were not paid all the wages they earned.

51. Plaintiff Fordyce was not paid any commission and/or bonus for the second quarter of 2022 despite having overseen multiple completed projects that had individual gross profits of over 20%, such that he was entitled to commissions pursuant to the commission agreement.

52. The additional compensation, including commissions and/or bonuses, paid to employees should have been included when calculating hourly Plaintiffs' regular rate of pay to determine overtime compensation.

53. The regular rate is computed by dividing an employee's total compensation in the workweek by the total hours worked in the workweek and the regular rate includes all renumeration for employment paid to, or on behalf of, the employee.

54. Defendants failed to include all additional compensation when calculating Plaintiffs Pelletier, Swayze, and other hourly employees' overtime rates.

55. This failure results in Plaintiffs Pelletier, Swayze and others similarly situated being deprived of their full overtime wages.

56. Other similarly situated employees have been employed by the Defendants and have not been paid the required overtime wages at one and one-half times their true regular rate of pay.

57. Plaintiffs Pelletier and Swayze, and similarly situated employees, were not exempt from the overtime provisions of the FLSA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

58. Plaintiffs seek to maintain this suit as a Class pursuant to Fed. R. Civ. P. 23 (Counts I and III, brought under the IWPCA and IMWL) and Collective pursuant to 29 U.S.C. §216(b)

(Count II, brought under the FLSA) and on behalf of themselves and all other employees who were not fully compensated for their earned commissions and/or for overtime hours worked.

59. Plaintiffs and other similarly situated current and former employees in the asserted classes regularly were underpaid their commission compensation and/or worked over 40 hours per week but were not fully paid their overtime at one and one-half times their true regular rate of pay.

60. Plaintiffs and asserted members of the Collective and Class are similarly situated because, *inter alia*, they all were not paid properly pursuant to the same unlawful policies and practices of Defendants and were underpaid commission and/or bonus compensation or the required overtime rate of one and one-half times their regular rate of pay for all work in excess of 40 hours per week and had such rights undermined and neglected by Defendants' unlawful practices and policies.

61. Defendants have encouraged, permitted, and required the Class and Collective to work without proper commission and/or bonus compensation or the required overtime compensation of one and one-half times the true regular rate of pay.

62. Defendants have known that Plaintiffs and other members of the Class and Collective have been deprived of commission and/or bonus compensation or required overtime compensation. Nonetheless, Defendants have operated under a scheme to deny the Plaintiffs and the Class and Collective the required commission and/or bonus compensation or overtime compensation of one and one-half time their true regular rate of pay for work in excess of 40 hours.

63. Climate Pros employs approximately 1,600 employees. There are estimated to be hundreds of current and former employees within the asserted class for this action during the material time who are similarly situated to Plaintiffs. With such numbers of similar claims for unpaid compensation, a class action is superior procedure for adjudicating such claims. Plaintiffs

request that the Court authorize and supervise notice to the members of the asserted classes so that all claims may be resolved efficiently in a single proceeding.

64. The records, if any, should be in the custody or control of Defendants concerning the members of the asserted class, the number of hours actually worked by Plaintiff and all other similarly situated employees, and the compensation actually paid, or not paid, to such employees.

65. Plaintiffs will fairly and adequately protect the interests of each proposed class member and have retained counsel that is experienced in class actions and employment litigation. Plaintiffs have no interest that is contrary to, or in conflict with, members of the class.

### Count I – Illinois Wage Payment and Collection Act
### (All Plaintiffs Individually and on Behalf of All Similarly Situated Employees against all Defendants)

66. Plaintiffs repeat, re-allege, and incorporate by reference the prior allegations in the preceding paragraphs as if expressly rewritten and fully set forth herein.

67. At all times relevant to this action Ernest was an "employer" of Plaintiffs, as the term "employer" is defined by the IWPCA, 820 ILCS 115/2 and 820 ILCS 115/13, as he was acting "in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed," he had the ability to authorize Climate Pros to pay the wages it owed to Plaintiffs, he had knowledge of Climate Pro's failure to pay said wages and he refused to authorize the payments.

68. At all times relevant to this action Hamilton was an "employer" of Plaintiffs, as the term "employer" is defined by the IWPCA, 820 ILCS 115/2 and 820 ILCS 115/13, as he was acting "in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed," he had the ability to authorize Climate Pros to pay the wages it owed to Plaintiffs, he had knowledge of Climate Pro's failure to pay said wages and he refused to authorize

the payments.."

69. At all times relevant to this action Burkland was an "employer" of Plaintiffs, as the term "employer" is defined by the IWPCA, 820 ILCS 115/2 and 820 ILCS 115/13, as she was acting "in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed," she had the ability to authorize Climate Pros to pay the wages it owed, she had knowledge of Climate Pro's failure to pay said wages and she refused to authorize the payments."

70. Section 2 of the IWPCA provides, in relevant part, that "[for all employees, other than separated employees, 'wages' shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculation. Payments to separated employees shall be termed `final compensation' and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the two parties."

71. Under the terms of the commission agreement with Climate Pros, Plaintiffs earned a salary or hourly bases wages and were eligible to earn commissions and/or bonuses. Plaintiffs' weekly salary or hourly wages, and commissions/bonuses constitute "wages" under Section 2 of the Act.

72. Section 4 of the IWPCA provides, in relevant part, that "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of

the weekly pay period in which the wages were earned. All wages paid on a daily basis shall be paid insofar as possible on the same day as the wages were earned, or not later in any event than 24 hours after the day on which the wages were earned."

73. Defendants failed to pay Plaintiffs' their earned wages, including commission payments, as required by the IWPCA.

74. In undertaking the wrongful acts alleged, Defendants violated the IWPCA, to the detriment and loss of Plaintiffs.

75. As a direct and proximate result of Defendants' violation of the IWPCA as alleged herein, Plaintiffs were underpaid and have been damaged in the amount to be determined at trial. Moreover, Plaintiffs are entitled to statutory damages of five percent (5%) of the amount of the underpayment for each month that payment remains unpaid, or that were paid late, pursuant to 820 ILCS 115/14(a).

## Count II – Fair Labor Standards Act
### (Plaintiffs Pelletier and Swayze, Individually and on Behalf of All Similarly Situated Employees against Climate Pros)

76. Plaintiffs repeat, re-allege, and incorporate by reference their prior allegations as if expressly rewritten and fully set forth herein.

77. Under the FLSA, Plaintiffs Pelletier, Swayze and the Collective were entitled to be paid at the overtime rate by Defendants for each hour worked in excess of 40 hours each work week at one and one-half times their regular rate of pay.

78. The proper overtime rate is computed by multiplying 1.5 times an employee's regular rate of pay, which includes all compensation, including commissions and/or bonuses.

79. Defendants failed to compensate the Collective at the proper overtime rate for all the work they performed in excess of 40 hours per week in violation of the FLSA.

80. Upon information and belief, Defendants' practices were not based upon Defendants' review of any policy or publication of the United States Department of Labor and therefore was willful and deliberate.

81. Due to Defendants' violations of the FLSA, the FLSA Class is entitled to recover from Defendants their unpaid compensation, liquidated damages, reasonable attorney's fees, and the costs of this action, pursuant to 29 U.S.C.§216(b).

**Count III – Illinois Minimum Wage Law**
**(Plaintiffs Pelletier and Swayze, Individually and on Behalf of All**
**Similarly Situated Employees Pursuant to Fed. R. Civ. Pro 23 against Climate Pros)**

82. Plaintiffs repeat, re-allege, and incorporate by reference their prior allegations as if expressly rewritten and fully set forth herein.

83. This count arises from Defendants' violation of the overtime compensation provisions of the IMWL, 820 ILCS § 105/1 *et seq.*

84. Under the IMWL, Defendants were and remain obligated to compensate Plaintiffs, and similarly situated employees, for all hours worked in excess of 40 hours in any individual work week. Overtime compensation must be paid at a rate of not less than one and one-half times the regular rate of pay and such regular rate must include all compensation, including commissions and/or bonuses.

85. Plaintiffs Pelletier, Swayze, and similarly-situated hourly employees were regularly permitted, encouraged and/or required to work in excess of 40 hours per week, but were not compensated at the required one and one-half times her regular rate for such overtime work.

86. By failing to pay overtime compensation due to Plaintiffs and similarly-situated employees, Defendants willfully, knowingly and/or recklessly violated the IMWL which requires overtime compensation of one and one-half times the true regular rate to be paid.

87. As a result of Defendants' policy and practice underpaying overtime compensation, Plaintiff and similarly situated employees have been damaged in that they have not received wages due to them pursuant to the IMWL.

### Count IV
### (Accounting – Climate Pros)

88. Plaintiffs repeat, re-allege, and incorporate by reference their prior allegations as if expressly rewritten and fully set forth herein.

89. By virtue of the relationships between the parties, Defendants have sole possession and control over the books, documents, data and accounts related to Plaintiffs' employment with Climate Pros. These materials are essential to the calculation of the monies owed to Plaintiffs by Climate Pros as a result of the acts described herein.

90. Specifically, Defendants are in sole possession of all books, documents, data and accounts relating to wages and commissions and/or bonuses paid (and not paid) to Plaintiffs by Climate Pros, including information on how those wages and commissions and/or bonuses were calculated.

91. Furthermore, Defendants are in sole possession of all books, documents, data and accounts relating to the calculation of cumulative gross profit on individual projects, which, as detailed herein, determined the commissions and/or bonuses employees, including Plaintiffs, could earn.

92. The books, documents, data and accounts upon which the claims for relief made in this Complaint are extensive and complex, thus requiring an order that Defendants, who are in sole possession and control of these records, provide access to the same in order for Plaintiffs, or their agents, to conduct an accounting. Over the course of their employment with Climate Pros, upon information and belief, Plaintiffs oversaw and/or worked towards the completion of hundreds of

14

individual projects, such that the books, documents, data and accounts at issue — which relate to each completed project — are extensive. Plaintiffs were eligible to earn a commission and/or bonus on all projects upon which they worked during their employment with Climate Pros.

93. As detailed herein, the books, documents, data and accounts upon which the claims for relief detailed in this Complaint are made are extensive and complex, such that other legal action demanding a precise and fixed sum is impractical at this time. In the absence of an accounting, Plaintiffs are unable to ascertain their damages with certainty. Furthermore, there is no adequate legal remedy under which Plaintiffs can compel Defendants to make a complete and thorough accounting, including providing them with all books, documents, data and accounts related to the claims detailed herein.

94. Accordingly, Plaintiffs submit that they have a need for discovery of complex books, documents, data and accounts which are in the sole possession of Defendants such that an accounting is warranted. *See Estate of Brown v. Arc Music Group*, 830 F. Supp. 2d 501, 509 (N.D. Ill. 2011). Plaintiffs are entitled to a Court order that Defendants produce, and cause all persons under their direction and control to produce, all books, documents, data and accounts for inspection that relate in any way to the causes of action detailed herein, namely, the calculation of cumulative gross profit on the projects they worked on, the payment of wages and commissions and/or bonuses to Plaintiffs by Climate Pros, and the calculation of the same.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests the following relief individually and on behalf of similarly situated employees:

    A.    A declaratory judgement that Defendants violated the IWPCA as to all Plaintiffs and similarly-situated employees and that Defendants violated the overtime

provisions of the IMWL and FLSA as to Plaintiffs Pelletier, Swayze, and all similarly-situated employees;

B. A declaratory judgement that Defendants' violation of the FLSA was willful;

C. Judgment against Defendants for the relief requested herein;

D. Unpaid commission, bonus, and/or overtime compensation;

E. Treble damages and statutory damages of 5% per month, as provided by IMWL;

F. Statutory damages of 5% per month, as provided by the IWPCA;

G. Liquidated damages as provided by the FLSA;

H. Make all pertinent books and records available to Plaintiffs to allow them and/or their agent to conduct an accounting of the books, documents, data and accounts related to Plaintiffs' employment by Defendants, as detailed herein;

I. Pre- and post-judgment interest;

J. Reasonable attorney's fees and costs; and

K. Such other and further relief as this Court deems appropriate and just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 18, 2023　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　By: /s/ Patrick Cowlin
　　　　　　　　　　　　　　　　　　　　　　One Plaintiffs' Attorneys

David Fish
Patrick Cowlin
John Kunze
Fish Potter Bolaños, PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
(312)861-1800
dfish@fishlawfirm.com
pcowlin@fishlawfirm.com
kunze@fishlawfirm.com